1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10

11   PATRICIA R.,[1]                          Case No.:  3:23-cv-02096-VET

12                     Plaintiff,
                                              **ORDER REGARDING JOINT**
13            v.                              **MOTION FOR JUDICIAL REVIEW**

14   LELAND DUDEK, Acting Commissioner
     of the Social Security Administration,[2]   **[Doc. No. 16]**
15
                      Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28   [1]   Partially redacted in compliance with Civil Local Rule 7.1(e)(6)(b).
     [2]   Leland Dudek is substituted for Kilolo Kijakazi pursuant to Fed. R. Civ. P. 25(d).

                                         1
                                                              3:23-cv-02096-VET

1    **I.    INTRODUCTION**

2    Plaintiff seeks review of Defendant Commissioner's denial of her application for

3    disability insurance benefits and supplemental security income. Doc. No. 1. Before the

4    Court is the parties' Joint Motion for Judicial Review of Final Decision of the

5    Commissioner of Social Security. Doc. No. 16 ("Joint Motion"). Therein, Plaintiff seeks

6    resolution of the following issues: (1) whether the Administrative Law Judge ("ALJ")

7    properly evaluated Plaintiff's testimony; and (2) whether the ALJ properly considered

8    Plaintiff's asthmatic flareups in evaluating her residual functional capacity ("RFC"). *Id.* at

9    5. Having considered the parties' arguments, applicable law, and the record before it, and

10    for the reasons discussed below, the Court **AFFIRMS** the Commissioner's final decision.

11    **II.    BACKGROUND**

12    **A.    Procedural History**

13    Pursuant to the Social Security Act ("Act"), Plaintiff first applied for disability

14    insurance benefits and supplemental security income on December 5, 2017, alleging

15    disability commencing on February 28, 2013. Administrative Record ("AR") 351–357.[3]

16    The Commissioner denied the application initially and on reconsideration. AR 273–277,

17    281–291. Plaintiff requested a de novo hearing before an ALJ, and on November 13, 2019,

18    the ALJ held a hearing. AR 295, 167–200. On December 23, 2019, the ALJ found that

19    Plaintiff was not disabled. AR 16–27. The Appeals Council declined review, and following

20    a complaint for judicial review, this Court reversed the ALJ decision and remanded the

21    matter for further proceedings. AR 1–6, 1200–1216.

22    On remand, the ALJ conducted another hearing and issued an unfavorable decision

23    on September 11, 2023. AR 1106–1120, 1129–1160. The ALJ again concluded that

24    Plaintiff was not disabled within the meaning of the Act. AR 1106–1120. On November

25    13, 2023, Plaintiff initiated this action seeking judicial review of the ALJ's decision. Doc.

26    No. 1. The parties filed the Joint Motion on May 17, 2024.

27

28

---

[3]    The AR is electronically filed at Doc. Nos. 10–12.

1

## B.    Summary of the ALJ's September 2023 Decision

2    The ALJ followed the Commissioner's five-step sequential evaluation process to

3    determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the

4    ALJ determined that Plaintiff had "not engaged in substantial gainful activity since

5    February 28, 2013," the alleged onset date. AR 1109. At step two, the ALJ found that

6    Plaintiff had the following severe impairments: diabetes mellitus II, asthma, osteoarthritis,

7    hands, fingers, bunions of the feet, major depressive disorder, and generalized anxiety

8    disorder. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or

9    combination of impairments that met or was medically equivalent to those in the

10    Commissioner's Listing of Impairments. *Id.* Before proceeding to step four, the ALJ found

11    that Plaintiff has the RFC to perform medium work with several limitations, including, in

12    the part, the following: (1) ability to lift, carry, push, and pull 50 pounds occasionally and

13    25 pounds frequently; (2) ability to stand and/or walk 6 hours and sit 6 hours in an 8 hour

14    workday with normal breaks; (3) avoid concentrated exposure to extreme cold, wetness,

15    vibration, and pulmonary irritants; (4) avoid constant and regular contact with the general

16    public; and (5) work in a low stress environment with few workplace changes. AR 1111–

17    1112.

18    As part of the RFC assessment, the ALJ considered Plaintiff's testimony regarding

19    the frequency and severity of her asthma. The ALJ found that her statements "about the

20    intensity, persistence, and limiting effects" of her symptoms were inconsistent with

21    examination findings in the record, which did not support "the intensity, frequency, and

22    debilitating effects to the extent alleged" by Plaintiff. AR 1113. In support of this

23    conclusion, the ALJ cites examinations from July 2015, February 2016, October 2016,

24    November 2017, February 2018, April 2018, and July 2018 where Plaintiff's asthma

25    symptoms were minimal or absent. AR 1113–1115. The ALJ further notes that Plaintiff

26    was treated for asthma episodes which "resolved without complication," Plaintiff

27    repeatedly showed normal oxygen levels despite some minimal wheezing, had normal

28    pulmonary efforts, and had never been intubated. AR 1115. In support of these statements,

1  the ALJ cites examinations from February 2020, July 2020, September 2020, October
2  2020, March 2021, February 2021, October 2022, November 2022, January 2023, and
3  March 2023. *Id.*

4          At step four, based on Plaintiff's RFC, the ALJ found that Plaintiff could not perform
5  past relevant work. AR 1118. At step five, considering Plaintiff's age, education, work
6  experience, and RFC, the ALJ determined that Plaintiff could perform jobs that exist in
7  significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded that
8  Plaintiff was not disabled between February 28, 2013 and the date of the decision. *Id.*

9  **III.    STANDARD OF REVIEW**

10         A court may set aside the Commissioner's denial of benefits "only if the ALJ's
11 decision was not supported by substantial evidence in the record as a whole or if the ALJ
12 applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020); *see*
13 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," and "means only
14 . . . such relevant evidence as a reasonable mind might accept as adequate to support a
15 conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison*
16 *Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028,
17 1035 (9th Cir. 2007) (substantial evidence is "more than a mere scintilla, but less than a
18 preponderance"). A court "must review the administrative record as a whole, weighing
19 both the evidence that supports and the evidence that detracts from the Commissioner's
20 conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

21         If the evidence can reasonably support either affirming or reversing a decision, the
22 Court may not substitute its judgment for that of the ALJ. *Garrison v. Colvin*, 759 F.3d
23 995, 1010 (9th Cir. 2014). Thus, "[i]f the evidence is susceptible to more than one rational
24 interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141,
25 1154 (9th Cir. 2020) (internal quotations omitted). Further, "review of an ALJ's fact-
26 finding for substantial evidence is deferential, and the threshold for such evidentiary
27 sufficiency is not high." *Id.* at 1159 (internal quotations omitted) (quoting *Biestek*, 587 U.S.
28

4

1    at 103); *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) ("Overall, the standard of

2    review is highly deferential.").

3         Lastly, the Court will not reverse for harmless error. *Marsh v. Colvin*, 792 F.3d 1170,

4    1173 (9th Cir. 2015). "An error is harmless only if it is inconsequential to the ultimate

5    nondisability determination." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020)

6    (internal quotations omitted).

7    **IV.   DISCUSSION**

8         Plaintiff presents the following issues for the Court's review, arguing that the ALJ

9    erred as to each:

10        1.  Whether the ALJ properly evaluated Plaintiff's testimony; and

11        2.  Whether the ALJ properly considered Plaintiff's asthmatic flareups in evaluating

12          the residual functional capacity.

13   *See generally* Joint Motion. The Court addresses each in turn.

14       **A.   The ALJ's Analysis of Plaintiff's Symptom Testimony**

15        Determining whether a claimant's symptom testimony is credible involves a two-

16   step analysis. "First, the ALJ must determine whether the claimant has presented objective

17   medical evidence of an underlying impairment which could reasonably be expected to

18   produce the pain or other symptoms alleged." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199

19   (9th Cir. 2024) (quoting *Garrison*, 759 F.3d at 1014). As part of this analysis, "the claimant

20   is not required to show that her impairment could reasonably be expected to cause the

21   severity of the symptom she has alleged; she need only show that it could reasonably have

22   caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (citation and internal

23   quotations omitted). "Nor must a claimant produce objective medical evidence of the

24   [symptom] itself, or the severity thereof." *Id*. (citation and internal quotations omitted).

25        "If the claimant satisfies the first step of the analysis, and there is no evidence of

26   malingering, 'the ALJ can reject the claimant's testimony about the severity of her

27   symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* at

28   1014–1015 (quoting *Smolen v. Charter*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "The clear

1  and convincing standard is the most demanding required in Social Security cases." *Id*. "The
2  standard isn't whether our court is convinced, but instead whether the ALJ's rationale is
3  clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th
4  Cir. 2022). "Contradiction with the medical record is a sufficient basis for rejecting the
5  claimant's subjective testimony." *Id.* (citation omitted). "Ultimately, the 'clear and
6  convincing' standard requires an ALJ to show his work . . . ." *Id*. "If the ALJ fails to provide
7  specific, clear, and convincing reasons for discounting the claimant's subjective symptom
8  testimony, then the ALJ's determination is not supported by substantial evidence."
9  *Ferguson*, 95 F.4th at 1199 (citation omitted).

10  Here, there was no evidence or finding of malingering. *See generally* AR 1106–
11  1120. Accordingly, the ALJ was required to articulate specific, clear, and convincing
12  reasons for rejecting Plaintiff's testimony about the severity of her symptoms. Plaintiff
13  argues that the ALJ failed to meet this standard in rejecting Plaintiff's testimony. Joint
14  Motion at 7. Specifically, Plaintiff contends that the ALJ ignored relevant medical evidence
15  regarding Plaintiff's asthma symptoms and failed to specify the testimony "undercut" by
16  the medical evidence. *Id.* at 8–12. Plaintiff also faults the ALJ for relying on medical
17  evidence that purportedly reflects cyclical improvements interspersed with debilitating
18  symptoms and not "broader developments." *Id.* at 12–13.

19  The Court disagrees with Plaintiff's characterization of the referenced evidence.
20  First, while the ALJ does not address every piece of medical evidence related to Plaintiff's
21  asthma, he is not required to do so. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006,
22  1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ
23  does not need to discuss every piece of evidence.") (internal citation and quotations
24  omitted).

25  Second, contrary to Plaintiff's assertions, the ALJ identifies the relevant testimony
26  at issue. Specifically, the ALJ notes that Plaintiff testified that she "is frequently
27  hospitalized for asthma," was recently treated for an asthma attack, was admitted to the
28  hospital twice in 2023 and "treated in the ER about four times," and uses a nebulizer and

1    an inhaler. AR 1113. The ALJ also cites Plaintiff's testimony that she "has episodic asthma

2    flare-ups, lasting between 2 to [3] weeks," she still has problems with flare-ups after

3    discharge from care, and she suffers from coughing and headaches as "symptoms do not

4    go away within a few days typically." *Id.*

5        Third, the Court rejects the notion that the ALJ impermissibly "cherry-picked" from

6    the record. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). On the

7    contrary, as detailed below, the ALJ cites to numerous records between 2015 through 2023

8    relating to Plaintiff's asthma, including records detailing Plaintiff's asthma symptoms at

9    various times. For instance, the ALJ cites examination notes from February 4, 2020 that

10    describe "minimal wheezing" and "wheezing noise" when Plaintiff breaths through her

11    mouth. AR 1115 (citing AR 1533). The ALJ also references examination notes from July

12    21, 2020, stating that Plaintiff had "bilateral wheezing throughout all lung fields." AR 1115

13    (citing AR 1644). The ALJ further cites examination notes from November 18, 2022,

14    describing "course breath sounds" and a "faint wheeze" from Plaintiff. AR 1115 (citing

15    AR 2590). Notably, Plaintiff references these examination records in support of her

16    argument that the ALJ ignored medical evidence. Joint Motion at 9, 10. The ALJ also cites

17    records relating to a hospitalization and a visit to urgent care. AR 1115 (citing AR 1644,

18    1651).

19        Fourth, review of the evidence cited by the ALJ confirms that substantial evidence

20    supports the ALJ's conclusion, namely that the record is inconsistent with Plaintiff's

21    testimony. Specifically, the ALJ first cites to seven medical exams between October 2014

22    and July 2018 where Plaintiff showed reduced, or no symptoms related to asthma. AR

23    1113–1115 (citing AR 467, 479, 488, 496, 502, 579–580, 713). This includes, in part, the

24    following:

25    (i)    a February 2016 exam where, despite Plaintiff's complaint of asthmatic

26            symptoms for the preceding three weeks, the examining physician found normal

27            respiratory effort with no retractions or wheezes, *see* AR 1113 (citing AR 488);

28

1      (ii)    an October 2016 exam where Plaintiff complained of multiple asthma episodes a
2               year, but the examining physician found her "breath sounds normal," "no
3               respiratory distress," and no wheezes or rales, *id.* (citing AR 479);

4      (iii)   a November 2017 exam where Plaintiff is experiencing coughing, but her "breath
5               sounds normal" and "she has no wheezes," *id.* (citing AR 467); and

6      (iv)   a February 2018 exam where Plaintiff is exhibiting wheezes and rales but is
7               suffering from pneumonia, *id.* (citing AR 579–580).

8  The ALJ also cites more recent examinations between 2020 and 2023 that provide
9  descriptions of mild to nonexistent asthma symptoms, including the following:

10      (i)    six examinations from July 22, 2020 through February 14, 2021 where Plaintiff
11               showed normal oxygen saturation levels, *see* AR 1115 (citing AR 1651, 1664,
12               1688, 1795, 1802, 1829);

13      (ii)    five exams from July 21, 2020 to January 25, 2023 where examination notes
14               indicate that "pulmonary effort is normal," "no respiratory distress," "no
15               wheezing," and/or "no rales," *id.* (citing 1644, 1651, 2567, 2590, 2662); and

16      (iii)   clinical notes from October 22, 2020 that state Plaintiff "has never required
17               oxygen and has never been intubated" despite "frequent exacerbations of her
18               asthma;" *id.* (citing AR 1719).

19  In short, the ALJ cites numerous medical examination records that repeatedly document
20  normal pulmonary/chest efforts, normal breath sounds, no wheezing, no rales in the lungs,
21  and normal oxygen saturation levels, despite Plaintiff's reports of severe asthma symptoms
22  or flareups. While the ALJ may not have cited every medical record referenced by Plaintiff
23  in the Joint Motion, the ALJ is not required to "perform a line-by-line exegesis of the
24  claimant's testimony, nor … draft dissertations when denying benefits." *Lambert v. Saul*,
25  980 F.3d 1266, 1277–1278 (9th Cir. 2020). In fact, "the ALJ's analysis need not be
26  extensive." *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1103 (9th Cir. 2014).

27        Lastly, the Court notes that many of the records Plaintiff cites concerning her asthma
28  symptoms is mixed at best. For example, Plaintiff cites May 12, 2018 exam notes that

1   reference wheezing and coughing, but those same notes indicate Plaintiff has "no

2   respiratory distress" and "no rales." AR 668. Similarly, an August 28, 2019 exam record

3   states that Plaintiff has "diffuse I&O wheezing and left lower lobe rales" but also notes

4   normal effort and breath sounds. AR 1085. Exam notes from two visits in November 2019

5   find "mild diffuse wheezing" or wheezing and rales in Plaintiff's left lung, but also note

6   "no respiratory distress," "no rales," and chest "effort normal." AR 1482, 1507.

7          In sum, the ALJ identifies the testimony at issue, analyzes the record relevant to that

8   testimony, and ties that together to find that Plaintiff's medical exams are inconsistent with

9   Plaintiff's testimony regarding the severity of her asthma symptoms. Accordingly, the

10  Court finds that the ALJ provided specific, clear, and convincing reasons for rejecting

11  Plaintiff's testimony.

12      **B.    The ALJ's Analysis of Asthma Symptoms in Evaluating the RFC**

13         The RFC is the maximum a claimant can do in the workplace despite his or her

14  limitations. 20 C.F.R. § 404.1545(a)(1). "In determining a claimant's RFC, an ALJ must

15  consider all relevant evidence in the record, including, *inter alia*, medical records, lay

16  evidence, and the effects of symptoms, including pain, that are reasonably attributed to a

17  medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th

18  Cir. 2006) (emphasis in original). Moreover, "careful consideration" is required for "any

19  evidence about symptoms because subjective descriptions may indicate more severe

20  limitations or restrictions that can be shown by medical evidence alone." *Id.* (internal

21  citations and quotations omitted). "While the ALJ may find testimony not credible in part

22  or in whole, he or she may not disregard it solely because it is not substantiated

23  affirmatively by objective medical evidence." *Id.* The ALJ meets this burden "by setting

24  out a detailed and thorough summary of the facts and conflicting evidence, stating his

25  interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

26  Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). The Court will

27  affirm an ALJ's determination of a claimant's RFC "if the ALJ applied the proper legal

28

1    standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427

2    F.3d 1211, 1217 (9th Cir. 2005).

3         In determining her RFC, Plaintiff contends that the ALJ failed to properly consider

4    her asthmatic flareups. In support thereof, Plaintiff identifies the number of days per year,

5    from 2016 through 2022, during which Plaintiff was purportedly "adversely" or

6    "significantly" affected by asthma flareups. Joint Motion at 22–24. And based on the

7    frequency of Plaintiff's asthma flareups, Plaintiff draws two conclusions. First, Plaintiff

8    argues that such flareups would lead to a level of absenteeism from work that would

9    effectively prevent her from maintaining employment. *Id.* at 24–25. Alternatively, Plaintiff

10   suggests that the asthmatic flareups would limit her to light exertion, meaning she could

11   not perform any of the medium occupations identified. *Id.* Both conclusions fail as neither

12   has support in the record.

13        First, as Plaintiff candidly admits, the absenteeism argument requires this Court to

14   assume that Plaintiff "would be absent from work during periods of asthma exacerbation."

15   *Id.* at 24. And while the Vocational Expert ("VE") confirmed that a person who is absent

16   25 days in a calendar year or consistently absent for more than one day a month would not

17   "sustain" work, the VE was "speaking in generalities." *See* AR 1152, 1154. Beyond

18   argument and assumption, Plaintiff cites nothing in the record to support the conclusion

19   that *every* asthma flareup referenced by Plaintiff would cause her to be absent from work

20   (as Plaintiff suggests). For instance, Plaintiff cites no doctor or expert opining that

21   Plaintiff's asthmatic flareups would impact her attendance at work, let alone cause chronic

22   absenteeism. Under these circumstances, there is no basis to conclude that the ALJ erred

23   by not considering absenteeism in formulating the RFC.

24        Similarly, there is no support for the conclusion that the asthma flareups would limit

25   Plaintiff to light exertion work. Again, Plaintiff cites no medical evidence or expert

26   opinions suggesting that the asthma flareups would cause the functional limitations that

27   Plaintiff suggests. On the contrary, as outlined above, the record demonstrates that despite

28   Plaintiff's asthma, Plaintiff's examinations repeatedly showed normal pulmonary/chest

1  effort, normal breath sounds, no wheezing/rales in the lungs, and usually normal oxygen

2  saturation levels. Speculation and argument by counsel are insufficient to support the

3  conclusion that the ALJ erred.

4       Lastly, the Court finds that the ALJ carefully considered the record as whole,

5  including Plaintiff's testimony, and crafted an RFC that contained several limitations.

6  Those limitations accounted for Plaintiff's asthma symptoms, including, for example,

7  limitations that Plaintiff avoid concentrated exposure to extreme cold, wetness, vibration,

8  fumes, dusts, gases, odors, poor ventilation and other pulmonary irritants, including smoke

9  and cat dander. AR 1112. Notably, in determining the RFC, the ALJ relied, in part, on the

10 opinions of DDS medical consultants, who are accepted medical sources that reviewed the

11 medical evidence and supported their conclusions with detailed narrative reports. AR 1116;

12 *see also* AR 201–217, 237–254. Plaintiff does not challenge the conclusions of the DDS

13 medical consultants. The ALJ also, as outlined above, considered and explicitly referenced

14 and/or discussed numerous records from 2015 through 2023 relating to Plaintiff's asthma

15 and associated symptoms. Moreover, for the reasons discussed supra, the ALJ's

16 consideration of Plaintiff's symptom reports was legally sufficient and supported by

17 substantial evidence.

18      In short, in determining the RFC, the ALJ's analysis satisfies the ALJ's obligation

19 to provide careful consideration of the available evidence relating to Plaintiff's asthma

20 symptoms, including flareups. Plaintiff may disagree with the ALJ's analysis and advocate

21 for an alternative interpretation, including drawing assumptions therefrom, but "[w]here

22 the evidence is susceptible to more than one rational interpretation, it is the ALJ's

23 conclusion that must be upheld." *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th

24 Cir. 1999); *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020) ("Resolving conflicts is

25 the ALJ's responsibility and prerogative . . ."). The Court will not second guess the ALJ's

26 reasonable interpretation. Accordingly, the Court finds that the ALJ's RFC determination

27 is supported by substantial evidence.

28

3:23-cv-02096-VET

1   **V.    CONCLUSION**

2         Based on the foregoing, the Court **AFFIRMS** the Commissioner's final decision

3   denying benefits. Accordingly, the **IT IS HEREBY ORDERED** that judgment be entered

4   in favor of Defendant Commissioner of the Social Security Administration and against

5   Plaintiff. The Clerk of the Court is directed to close this action.

6         **IT IS SO ORDERED.**

7

8     Dated:  March 28, 2025

9                           Honorable Valerie E. Torres
                               United States Magistrate Judge

12